UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOHN V. DOE,

                Plaintiff,

       v.

HOLY SEE, et al.,

                Defendants.

No. CV-02-430-MO

OPINION AND ORDER

**MOSMAN, J.,**

The events giving rise to this case occurred in 1965-1966, when plaintiff John V. Doe, then a minor, alleges he was sexually abused by Father Andrew Ronan, a Catholic priest in Portland, Oregon. On April 3, 2002, plaintiff filed suit against the Holy See, the Order of the Friar Servants of Mary ("the Order"), the Archdiocese of Portland ("the Archdiocese"), and the Catholic Bishop of Chicago ("the Bishop").[1] (Compl. (#1).) Plaintiff filed an amended complaint on April 1, 2004 (#86). In both the original and amended complaint, plaintiff alleged that these defendants are vicariously and directly liable for Ronan's actions under state law theories of vicarious liability, negligent retention, negligent supervision, and negligent failure to warn. The

---

[1] The Bishop and the Archdiocese were dismissed by stipulation of the parties in 2004. ((#90) & (#103).)

-1-

amended complaint added an allegation of fraud against all defendants.[2] In prior proceedings before this Court and the Ninth Circuit Court of Appeals, all counts against the Holy See were dismissed under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-1611, except for Count V alleging vicarious liability. Plaintiff now moves for leave to amend his complaint a second time. (Mot. (#195).) The Holy See opposes the motion (Def.'s Resp. (#201).) Although the Federal Rules of Civil Procedure set forth a liberal policy that favors granting leave to amend, the unusual nature of this case persuades me to DENY plaintiff's motion on grounds of undue prejudice, undue delay, and futility.

## BACKGROUND

### I.    Procedural History

For over seven years, the parties have litigated procedural issues that centered around the allegations contained in plaintiff's original and amended complaints. The Holy See, which has yet to file an answer in this case, filed its first motion on August 28, 2003—a motion to dismiss for lack of personal jurisdiction and for insufficient service of process (#56). The motion was denied on February 5, 2004, when plaintiff was given an additional sixty days to effectuate service. (Mins. (#81).) On April 1, 2004, plaintiff filed an amended complaint. (Am. Compl. (#86).) The Holy See filed its second motion to dismiss for lack of jurisdiction and for insufficient service of process on August 31, 2004 (#101). The motion was once again denied, and plaintiff was granted another sixty days to effectuate service. (Mins. (#113).) Plaintiff later successfully served the Holy See through the U.S. Department of State (#126).

---

[2]  The parties later agreed that the FSIA barred plaintiff's fraud claim (Pl.'s Resp. (#145) at 22; Order (#158) at 32).

On November 9, 2005, the Holy See filed a motion to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction (#133), as well as a motion to dismiss for failure to state a claim (#135). The motions asserted, in relevant part, that the FSIA barred the Court from asserting jurisdiction over the case. In response to the Holy See's motion, plaintiff did not move to amend his complaint a second time. Instead, he chose to litigate the subject matter jurisdiction issue based on the allegations already contained in his 2004 amended complaint. Plaintiff's opposition memorandum described, in considerable detail, the language of the complaint that would allow the Court to assume jurisdiction under both the commercial activity and tort exceptions to the FSIA. (Pl.'s Memo. in Opp'n (#141) at 5, 11-12, 14-15, 17-18.)

After the parties fully briefed and argued their positions, I issued an opinion and order on June 7, 2006, denying the Holy See's motion to dismiss (#158). Although I concluded that plaintiff's cause of action sounded in tort and did not meet the commercial activity exception to the FSIA, I found that plaintiff had alleged facts sufficient to establish jurisdiction under the FSIA's tort exception. (*Id.*)

The Holy See appealed to the Ninth Circuit Court of Appeals (#159), and plaintiff cross-appealed (#164). In his appellate brief, plaintiff once again described the language of his complaint in great detail and asserted that the allegations contained in his amended complaint would support jurisdiction under both the commercial activity and tort exceptions to the FSIA. (*See* Lena Decl. (#202), Ex. A at 6, 8, 15.)

The Ninth Circuit published a thirty-page opinion in this case on March 3, 2009. *Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009). (#188.) Like this Court, the Ninth Circuit evaluated only the allegations contained in the amended complaint and accepted them as true for purposes

of deciding the jurisdictional question. *Id.* at 1073. In its decision, the Ninth Circuit dismissed Count VI, which alleged direct negligence by the Holy See. The court held that the Holy See enjoyed separate juridical status such that the actions of the Order, Archdiocese, and Bishop were not attributable to it under an agency theory. Next, the court considered plaintiff's allegations that the Holy See itself had acted negligently. The Ninth Circuit concluded that these claims were barred by the FSIA's exclusion for discretionary functions, which "shields foreign sovereigns from tort claims 'based upon the exercise [of] . . . a discretionary function regardless of whether the discretion be abused.'" *Id.* at 1083 (quoting 28 U.S.C. § 1605(a)(5)(A)). Count V, the vicarious liability claim, is now before this Court on remand and is the only cause of action that remains viable against the Holy See.

## II.    <u>Proposed Amended Complaint</u>

Plaintiff's proposed amended complaint adds no new claims or legal theories but contains approximately ten pages of factual allegations. (Pl.'s Memo. (#196), Ex. A.) The allegations relate primarily to (1) Holy See financial activities, including a fund-raising program called "Peter's Pence"; (2) a 1962 Holy See policy document, *Crimen Sollicitationis*, which instructs Catholic leaders on how to handle sexual abuse allegations in the church; (3) a government report that investigated sexual abuse of minors in Catholic churches in Ireland; and (4) a report on sexual abuse in the Roman Catholic Church prepared by Father Gerald Fitzgerald in 1962 and submitted to Pope Paul VI in 1963.

### A.    *Financial Activities and Peter's Pence*

According to plaintiff's proposed amended complaint, Peter's Pence is a program through

which the Holy See solicits funds that are sent directly to the Holy See. (Pl.'s Memo. (#196), Ex. A at 3-4.) The program, which has existed since 1871, receives contributions from across the world and raises approximately $80 million dollars annually. The amendment also describes the Holy See's business reporting methods and redefines a "diocese" as a "business enterprise." (*Id.* at 4-5.)

### B.    *Crimen Sollicitationis*

*Crimen Sollicitationis* is a policy document written in 1962 by Cardinal Alfredo Attaviani.[3] It instructs bishops to pursue sexual abuse cases "in a most secretive way." (Pl.'s Memo. (#196), Ex. A at 23.) In his proposed amendments, plaintiff alleges that the Holy See exercised day-to-day control over its followers through mandatory policies like those contained in the *Crimen Sollicitationis*. (*Id.* at 7-8, 22-25.)

### C.    *Irish Report on Child Abuse*

In May 2000, the Irish government established The Commission to Inquire into Child Abuse. The Commission released a report in May 2009, which included findings about sexual abuse in Catholic churches in Ireland. According to plaintiff, the Commission report concluded that cases of sexual abuse were managed in secret, were not reported to police, and were known to religious authorities within the Catholic church, who often responded to evidence of sexual abuse by transferring an offender to another location. (Pl.'s Memo. (#196), Ex. A at 11.) Plaintiff's proposed amended complaint further alleges that "[e]ach Defendant, including the Holy See, was an active participant and mandated the policies that led to these horrific occurrences in Ireland." (*Id.*)

---

[3] Cardinal Attaviani's role in the Holy See's administration is unclear.

### D.    *Father Fitzgerald's Report*

Finally, plaintiff's proposed amended complaint adds allegations about a report prepared by Father Gerald Fitzgerald in 1962. According to plaintiff, Father Fitzgerald's report identified and discussed the problem of sexual abuse in the Catholic church. In 1963, Father Fitzgerald had a private audience with Pope Paul VI and later submitted the report to the pope at the pope's request (Pl.'s Memo. (#196), Ex. A at 12.) Plaintiff cites this report and Father Fitzgerald's audience with Pope Paul VI as evidence that "the Holy See knew that it had a widespread problem of its clergy sexually molesting minors . . . and it authorized, facilitated and participated in the creation of [new forums for abuse] in the United States." (*Id.*)

## DISCUSSION

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading once as a matter of course before being served with a responsive pleading.[4] Although defendant has yet to file a responsive pleading in this case, plaintiff previously amended his complaint on April 1, 2004. (#86.) Therefore, he is not entitled to amend his complaint as a matter of course.

If plaintiff may not amend his complaint as a matter of course, Rule 15(a)(2) permits amendment only with written consent of the opposing party or leave of the court. Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires." In deciding whether justice requires amendment, the court should consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*

---

[4] A motion to dismiss under Rule 12(b) is not considered a responsive pleading. *Miles v. Dep't of the Army*, 881 F.2d 777, 781 (9th Cir. 1989).

*Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

## I.    <u>Undue Prejudice</u>

Undue prejudice to the opposing party carries the greatest weight in evaluating a motion for leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The party opposing leave to amend bears the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). I find that the Holy See has met that burden here in light of plaintiff's procedural stance up until this time.

At prior stages of litigation, plaintiff chose to stand on the allegations raised in his amended complaint and contest the jurisdictional issue to its fullest extent. When the Holy See filed its motion to dismiss in November 2005, plaintiff chose to oppose the motion rather than move for leave to amend his complaint. Likewise, when the Holy See appealed this case to the Ninth Circuit in June 2006, plaintiff did not seek to amend his complaint, but rather filed a cross-appeal. Each time plaintiff contested the jurisdictional issue, he pointed to the specific allegations in his amended complaint that would support jurisdiction.

The parties have now spent four years litigating subject matter jurisdiction alone. As the litigation ensued, the Holy See continued to rely on plaintiff's apparent decision to stand on his allegations. The Holy See expended considerable time and resources arguing that, even accepting these allegations as true, the Court could not exercise jurisdiction over plaintiff's claims. All the jurisdictional litigation, before this Court and before the Ninth Circuit, depended on the allegations raised in plaintiff's amended complaint. Each line of the amended complaint was scrutinized, but at no time did plaintiff move to amend his complaint after April 1, 2004. Now, more than five years later, he seeks to do so. If plaintiff were granted leave to amend, the Holy

See would be forced to raise its jurisdictional challenges anew.

The specific facts of this case also merit consideration. Here, the subject matter jurisdiction issue depended entirely on whether the FSIA granted the Holy See immunity from suit. Sovereign immunity doctrines exist, in part, to prevent a sovereign from bearing the burden of litigation. *Aschroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1945-46 (2009) (observing that the domestic immunity doctrines are "both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation'"). Requiring the Holy See to continually relitigate its immunity under the FSIA would subvert the policies behind the Act itself.

If litigation is allowed to continue long enough, there will often be something new to say. At a certain point, a plaintiff must decide either to stand on the allegations raised in his complaint or amend them.[5] Here, plaintiff made a decision to litigate his allegations before this Court and before the Ninth Circuit. Based on the Holy See's reliance on the amended complaint, the interest of judicial economy, and the unusual nature of this case, I find that plaintiff's proposed amendment would prejudice both the Holy See and the public interest in the "just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

## II.    Undue Delay

Delay alone is not sufficient reason to deny a plaintiff leave to amend, but may provide an additional basis for denial. *See Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973). For purposes of determining whether a plaintiff unduly delayed amending his complaint, the

---

[5] The Court recognizes that there are circumstances in which it is appropriate for a plaintiff to respond to a successful facial attack by amending his complaint, even after lengthy litigation. In this case, however, it is not only the length of the litigation but also the Holy See's reliance and the policy goals of the FSIA that weigh against amendment.

court may consider "whether the moving party knew or should have known the facts and theories raised by the amendment." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).

Plaintiff's motion for leave to amend his complaint asserts that the amendment is necessary "simply to add some of the factual allegations which have come to light after the initiation of this suit." (Pl.'s Mem. (#196) at 2.) It appears, however, that many of these facts and sources were widely available when plaintiff amended his complaint on April 1, 2004. The Peter's Pence program has existed since 1871. (Pl.'s Memo. (#196), Ex. A at 3.) Other allegations related to the Holy See's financial activities are drawn primarily from the Code of Canon Law, which was most recently revised in 1983, and an "Apostolic Constitution" issued by Pope John Paul II on August 15, 1990. (*Id.* at 5-6; Def.'s Resp. (#201) at 15.)

With respect to the *Crimen Sollicitationis* allegations, which comprise a substantial portion of plaintiff's proposed amendments, the Holy See presented the following evidence of undue delay:

(1)    National news organizations reported on the document in 2003, well before plaintiff amended his complaint (Lena Decl. (#202) Ex. H);

(2)    An expert with whom plaintiff's counsel has worked in the past, wrote an article about the *Crimen Sollicitationis* in August 2003 (*Id.* at Ex. J);

(3)    Plaintiff's counsel filed suit in Kentucky in June 2004 based on information contained in the document (*Id*. at Ex. M);

(4)    Plaintiff's counsel questioned an Archbishop about the document on April 7, 2004 – six days after plaintiffs filed the Amended Complaint and almost five months before defendant filed its first motion to dismiss (*Id.* at Ex. L).

The Holy See's evidence shows that plaintiff was very likely aware of the *Crimen Sollicitationis* before filing his amended complaint, and certainly before responding to the Holy See's motion to

-9-

dismiss.

Plaintiff has not satisfactorily explained why he failed to amend his complaint when he had notice of the *Crimen Sollicitationis* in 2003-2004. Plaintiff claims that he could not have referenced the *Crimen Sollicitationis* in the amended complaint because the document had not yet been "authenticated." (Pl.'s Reply (#203) at 4.) I know of no case or Federal Rule of Civil Procedure that requires a document to be authenticated before it can be pleaded as part of a complaint, and plaintiff has cited none. Accordingly, I find that plaintiff has exercised undue delay in adding allegations related to the Holy See's financial activities and the *Crimen Sollicitationis*.

## III.  **Futility**

Futility alone is sufficient grounds to deny a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). In evaluating plaintiff's proposed amendments, specifically those related to the reports written by Father Fitzgerald and The Commission to Inquire into Child Abuse, I find that the new allegations are unlikely to revive plaintiff's dismissed claims by establishing jurisdiction.

The proposed amendments do not bolster plaintiff's subject jurisdiction arguments, nor do they add new theories of liability. Rather, plaintiff simply adds facts that are substantively similar to the allegations the Ninth Circuit considered, and rejected, on appeal. At the time the Ninth Circuit considered this case, the amended complaint already contained allegations that the Holy See knew about sexual abuse in the church and promulgated polices and procedures that allowed the abuse to take place. For example, the 2004 amended complaint alleges that the Holy See:

(1)    "promulgates and enforces the laws and regulations" of the Catholic Church;

-10-

      (2)    "examines and is responsible for the work and discipline" of the Catholic clergy; and

      (3)    "by and through its agents, servants and employees, knew or reasonably should have known of Ronan's dangerous and exploitive propensities . . . and despite such knowledge, Defendant negligently retained Ronan and failed to warn those coming in contact with him."

(Am. Compl. (#86) ¶¶ 3, 39.)

Even though the Ninth Circuit accepted these allegations as true, the court nevertheless determined that plaintiff's claims were barred by the discretionary function provision of the FSIA. As the court observed, "[N]owhere does Doe allege the existence of a policy that is '*specific and mandatory*' on the Holy See. . . . Nor does the complaint in any other way allege that the Holy See's decisions to retain Doe . . . involved no element of judgment, choice, or discretion." *Holy See*, 557 F.3d at 1084. Neither the Fitzgerald report nor the Commission report shows that the Holy See acted pursuant to a mandatory, non-discretionary policy. At most, these reports suggest that the Holy See implemented mandatory policies that limited the discretion of its subordinates.

The Ninth Circuit also concluded that plaintiff's allegations did not create the type of agency relationship that would make the Holy See liable for the actions the Order, Archdiocese, or Bishop. Rather, the Holy See enjoys separate juridical status. To create an agency relationship, the Ninth Circuit required plaintiff to allege "day-to-day, routine involvement of the Holy See in the affairs of the Archdiocese, the Order, and the Bishop." *Id.* at 1079. Neither report  suggests that level of involvement.

Here, the Fitzgerald and Commission reports add factual support to a core allegation contained in the 2004 amended complaint:  The Holy See knew about a problem of sexual abuse

in the Catholic church and implemented policies and procedures that exacerbated the problem.

Adding factual support to the original allegation is unlikely to remove the FSIA bar and bring

plaintiff's dismissed claims within the Court's jurisdiction.

## CONCLUSION

For the foregoing reasons, I DENY Plaintiff's Motion for Leave to File Amended

Complaint (#195).


IT IS SO ORDERED.


DATED this  19th  day of October, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

-12-