UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JOHN V. DOE,                                                    Case No. CV 02-430-MO

          Plaintiff,

                                                        OPINION AND ORDER

     v.

HOLY SEE, et al.,

          Defendants,

_____

MOSMAN, Judge:

      Plaintiff seeks an order directing the Holy See to respond to its jurisdictional discovery

requests. <u>See</u> Mem. in Supp. (doc. 240). For the reasons that follow, I find that Plaintiff is

entitled to limited jurisdictional discovery related to whether Andrew Ronan was an employee of

the Holy See. Plaintiff is not, however, entitled to discovery relating to the Holy See's

commercial activities, or its control over the Archdioceses of Portland and Chicago

("Archdioceses"), Religious Superiors, or the Order of the Friar Servants of Mary ("Order").

PAGE 1 - OPINION AND ORDER

**<u>Procedural Background</u>**

Plaintiff filed this action against the Holy See and other defendants alleging that he was sexually abused by Father Andrew Ronan, a Catholic priest.  Plaintiff asserted various causes of action against the Holy See, including: (1) vicarious liability for Ronan's abuse; (2) vicarious liability for the actions of the Portland Archdioceses and other defendants; (3) direct liability for the Holy See's negligent retention of Ronan, and failure to warn; and (4) fraud.  The Holy See moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that as a foreign sovereign, it was immune from federal court jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C.§§ 1330, 1604-1611, and neither the "tortious act," nor the "commercial activity" exceptions to sovereign immunity applied.  28 U.S.C. §§ 1605(a)(2) & (5).

In <u>Doe v. Holy See (Holy See I)</u>, 434 F. Supp. 2d 925 (D. Or. 2006), I dismissed Plaintiff's fraud claim, but denied the Holy See's motion to dismiss Plaintiff's other claims. I found that the court did not have subject matter jurisdiction under FSIA's commercial activity exception to sovereign immunity, but that the tortious activity exception permitted the court to exercise jurisdiction over Plaintiff's vicarious liability and negligence claims.  <u>Id</u>. at 957.

The Ninth Circuit affirmed in part, and reversed in part.  The Ninth Circuit confirmed that Plaintiff had sufficiently alleged Ronan was an employee of the Holy See acting within the scope of his employment.  <u>Doe v. Holy See (Holy See II)</u>, 557 F.3d 1066, 1081-83 (9th Cir. 2009). Accordingly, FSIA's tortious activity exception to sovereign immunity permitted the court to exercise jurisdiction over Plaintiff's vicarious liability claim based on Ronan's conduct.  <u>Id</u>. The Ninth Circuit held, however, that Plaintiff failed to state a vicarious liability claim against the Holy See based upon the conduct of the Archdioceses and other defendants because Plaintiff

PAGE 2 - OPINION AND ORDER

failed to allege that the Holy See exerted day-to-day, routine control over those parties.  Id. at

1080.  The Ninth Circuit also held that the FSIA's "tortious act exception does not provide

jurisdiction over Doe's negligent hiring, supervision, and failure to warn claims because they are

barred by the discretionary function exclusion." Id. at 1085.  The Ninth Circuit therefore

dismissed Plaintiff's vicarious liability and negligence claims based on the conduct of the

Archdioceses, the Order, and other defendants.

On September 8, 2010, the Holy See filed a second motion to dismiss, challenging the

factual basis for this court's jurisdiction under FSIA.[1]  The Holy See maintains that it is immune

from suit because the discovery provided by other defendants demonstrates that Ronan was not

an employee and therefore, FSIA's "tortious act" exception to sovereign immunity does not

apply.  In light of the Holy See's fact-based challenge to subject matter jurisdiction, Plaintiff

seeks a court order directing the Holy See to respond to its jurisdictional discovery requests.

## Legal Standard for Jurisdictional Discovery Under FSIA

Foreign sovereign immunity under FSIA "was meant to spare foreign states not only from

liability on the merits but also from the cost and inconvenience of trial" and litigation.  Peterson

v. Islamic Rep. Of Iran, 627 F.3d 1117, 1127 (9th Cir. 2010).  In determining whether to permit

jurisdictional discovery, the court must be cognizant of the "delicate balance between permitting

discovery to substantiate exceptions" to FSIA's grant of sovereign immunity and protecting a

sovereign's "legitimate claim to immunity from discovery."  Alpha Therapeutic Corp. v. Nippon

Hoso Kyokai, 199 F.3d 1078, 1088 (9th Cir. 1999), withdrawn on other grounds by 237 F.3d

_____

[1] I stayed the Holy See's motion to dismiss pending resolution of Plaintiff's discovery
requests. See docs. 236, 244.

PAGE 3 - OPINION AND ORDER

1007 (9th Cir. 2001) (quotation marks and citation omitted).  "To ensure that this balance is

preserved, discovery should be ordered circumspectly and only to verify allegations of specific

facts crucial to an immunity determination." Alpha Therapeutic, 199 F.3d at 1088  (quotation

marks and citation omitted).

     Generally, a district court's refusal to allow jurisdictional discovery "will not be reversed

except upon the clearest showing that denial of discovery results in actual and substantial

prejudice to the complaining litigant.  Discovery may be appropriately granted where pertinent

facts bearing on the question of jurisdiction are controverted or where a more satisfactory

showing of the facts is necessary." Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008).

## Discussion

     Plaintiff's discovery requests fall into four broad categories.  First, Plaintiff seeks

information relating to the Holy See's commercial activity and financial dealings in the United

States.  See Pl.'s Mem. in Supp., at 14-17; Finnegan Decl., Ex. A, Request for Produc. ("RFP")

Nos. 32-37, 39; Finnegan Decl., Ex. B, Interrog. ("ROG") Nos. 9-10; Finnegan Decl., Ex. C,

Request for Admis. ("RFA") Nos. 20-24; (collectively, "Commercial Activity Requests").

Second, Plaintiff seeks information regarding the Holy See's relationship with, and authority

over, the Archdioceses, the Order, and Religious Superiors in the United States.  See Pl.'s Mem.

in Supp., at 7-8, 10; Finnegan Decl., Ex. A, RFP Nos. 1-7, 14, 23-31, 38, 40-42; Finnegan Decl.,

Ex. B., ROG Nos. 3, 7-8, 17-18, 20; Finnegan Decl., Ex. C, RFA Nos. 8, 13-14, 17-19, 25-31

(collectively, "Agency Requests").  Third, Plaintiff seeks information regarding the Holy See's

right to control individual priests, including Father Andrew Ronan. See Finnegan Decl., Ex. A,

RFP Nos. 8-13, 15-22; Finnegan Decl., Ex. B, ROG Nos. 2, 4-6, 11-16, 19; Finnegan Decl.,

PAGE 4 - OPINION AND ORDER

Ex. C, RFA Nos. 1-7, 9-12. 15-16 (collectively, "Employment Requests").  Finally, Plaintiff asks

the court to order oral depositions of several current and former officials of the Holy See.

### A. Commercial Activity and Agency Requests

Plaintiff is not entitled to discovery relating to the Holy See's commercial activity in the

United States because he cannot demonstrate that such discovery is "crucial" to the resolution of

the only jurisdictional issue before the court (*i.e.*, whether Ronan was an employee of the Holy

See at the time of the abuse). <u>Alpha Therapeutic</u>, 199 F.3d at 1088.  In my June 7, 2006 Opinion

and Order, I analyzed the statutory text of FSIA and the case law interpreting the commercial

activity exception, carefully considered Plaintiff's allegations, and concluded that this court did

"not have subject matter jurisdiction under the FSIA commercial activity exception to the Holy

See's Sovereign immunity." <u>Holy See I</u>, 434 F. Supp. 2d at 940-42.  The Ninth Circuit declined

to review that finding under the collateral order doctrine.  <u>Holy See II</u>, 557 F.3d at 1075-76.

Consequently, this court's ruling is the law of the case and FSIA's tortious activity exception to

sovereign immunity is the only basis for exercising jurisdiction in this case.  For that exception to

sovereign immunity to apply, Plaintiff must demonstrate that Ronan was an employee of the

Holy See and acting within the scope of his employment at the time he sexually abused Plaintiff.

<u>Id</u>. at 1081-82; 28 U.S.C. § 1605(a)(5).  The Holy See's financial and commercial dealings in the

United States are not relevant to the resolution of that narrow jurisdictional question.

Plaintiff's Agency Requests are similarly irrelevant.  The Ninth Circuit dismissed

Plaintiff's vicarious liability claim based upon the conduct of the Archdioceses, Orders, and

Religious Superiors in the United States.  <u>Holy See II</u>, 557 F.3d at 1080.  The Ninth Circuit also

held that FSIA's "tortious act exception does not provide jurisdiction over Doe's negligent

hiring, supervision, and failure to warn claims because they are barred by the discretionary function exclusion." Id. at 1085. Under the Ninth Circuit's ruling, the Holy See's relationships with, and authority over, the Archdioceses, the Orders, and Religious Superiors are not relevant to any issue presently before the court.

Given this court's determination that FSIA's commercial activity exception is inapplicable and the Ninth Circuit's dismissal of Plaintiff's claims against the Holy See based on the conduct of the Archdioceses, the Order, and other defendants, I DENY both Plaintiff's Commercial Activity Requests (RFP Nos. 32-37, 39; ROG Nos. 9-10; RFA Nos. 20-24) and Agency Requests (RFP Nos. 1-7, 14, 23-31, 38, 40-42; ROG Nos. 3, 7-8, 17-18, 20; RFA Nos. 8, 13-14, 17-19, 25-31). Cf. Am. W. Airlines v. GPA Group, Ltd., 877 F.2d 793, 801 (9th Cir. 1989) (requests for FSIA jurisdictional discovery properly denied where they "were largely unrelated to the facts central to the jurisdictional issues"); see also Mwani v. Bin Laden, 417 F.3d 1, 17 (D.C. Cir. 2005) (affirming denial of jurisdictional discovery where commercial activity exception did not apply); Idas Res. N.V. v. Empresa Nacional de Diamantes de Angola E.P., No. 06-00570 (ESH), 2006 WL 3060017, at *11 (D.D.C. Oct. 26, 2006) (awarding plaintiffs "even limited jurisdictional discovery" would frustrate sovereign's entitlement to immunity where plaintiff failed to allege facts giving rise to commercial activity exception); Howland v. Hertz Corp., 431 F. Supp. 2d 1238, 1244-45 (M.D. Fla. 2006) (denying jurisdictional discovery where court had held that the issue was irrelevant to an immunity determination).

**B. Employment Requests**

Under FSIA's tortious activity exception, whether Ronan was an "employee" of the Holy See is governed by Oregon law. Randolph v. Budget Rent-A-Car, 97 F.3d 319, 325 (9th Cir.

PAGE 6 - OPINION AND ORDER

1996).  In Oregon, an employment relationship turns on the "right of one party to control the

activities of the other."  Jenkins v. AAA Heating & Cooling, Inc., 245 Or. 382, 386, 421 P.2d

971, 973 (Or. 1966).  A person is an employee if "the principal directs not only the end result, but

also controls how the employee performs the work."  Vaughn v. First Transit, Inc., 346 Or. 128,

137, 206 P.3d 181, 187 (Or. 2009) (emphasis in original).  The "principal factors" in determining

whether a right to control exists are: "(1) direct evidence of the right to, or the exercise of,

control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire."

Kaiel v. NCE Cultural Homestay Institute, 129 Or. App. 471, 475, 879 P.2d 1319, 1322-23 (Or.

Ap. Ct. 1994).  "No single factor is dispositive," and in some cases, "a single factor that indicates

an employer-employee relationship" may be sufficient to establish employee status.  Stamp v.

Dep't Consumer & Bus. Servs., 169 Or. App. 354, 9 P.3d 729, 733-34 (Or. Ct. App. 2000).

     Because there are significant factual disputes as to whether the Holy See had the right to

control and fire Ronan, I find that Plaintiff is entitled to limited jurisdictional discovery related to

whether Ronan was an employee of the Holy See. See Siderman de Blake v. Rep. of Argentina,

965 F.2d 699, 713 (9th Cir. 1992) ("To the extent that the jurisdictional facts are disputed . . . ,

the parties should be allowed to conduct discovery for the limited purpose of establishing

jurisdictional facts before the claims can be dismissed.").  Here, Plaintiff has proffered evidence

that tends to show the Holy See knew of Ronan's propensities and that in some cases, the Holy

See exercised direct control over the conduct, placement, and removal of individual priests

accused of similar sexual misconduct.  See Finnegan Decl., Exs. 1-2, 4 (documenting laicization

and the Holy See's control of the process); Id. Ex. 3 (correspondence regarding punishment of a

priest who admitted sexual abuse, with the head of the Holy See's Congregation for the Doctrine

of Faith indicating that he wanted other measures to be exhausted before engaging in removal

proceedings); Id. Exs. 7, 8, 8A (correspondence with Holy See regarding another priest accused

of sexual abuse). This suggests that the Holy See may have also reserved the right to transfer and

remove Ronan. Plaintiff also proffered evidence suggesting the Holy See has the right to control

the training, education, dress, and everyday conduct of priests. Id. Exs. 8, 8A, 9, 9A, and 12.

  The Holy See refuses to acknowledge or deny whether it knew of Ronan's abuse, or

whether it played any role in his training, education, transfers, or removal. Instead, the Holy See

argues that the discovery provided by U.S.A. Province shows that the various Orders exercised

control over Ronan's day-to-day activities. That Ronan was an employee of the Order, however,

does not preclude a finding that he was also an employee of the Holy See. See e.g., Eldridge v.

Allstate Ins. Co., 256 Or. 281, 285, 473 P.2d 132, 134 (Or. 1970) (recognizing that a person may

be an employee of two separate entities under Oregon law). There are significant factual disputes

about whether the Holy See retained the right to exercise control over Ronan's activities,

placement, training, education, and removal. This court's jurisdiction turns on the resolution of

those disputed issues. Accordingly, Plaintiff is entitled to limited jurisdictional discovery related

to whether Ronan was an employee of the Holy See at the time of the alleged abuse.

  While limited discovery related to whether the Holy See exercised control over Ronan's

employment is warranted, some of Plaintiff's Employment Requests are overly broad and

unnecessary to the resolution of the narrow jurisdictional issue before the court. Alpha

Therapeutic, 199 F.3d at 1088. Plaintiff seeks, for example, confidential information regarding

hundreds (and potentially thousands) of third parties, without any specified temporal or

geographical limitation. See e.g., RFP Nos. 9-10 (seeking all correspondence regarding

PAGE 8 - OPINION AND ORDER

laicization of <u>any</u> priest and all documents referencing the sexual abuse of <u>any</u> person by <u>any</u> priest in the world). Some of these broad requests appear to be based on little more than a hunch that they might yield valuable or embarrassing information about the Holy See, and other instances of sexual abuse. <u>See</u> <u>Boschetto</u>, 539 F.3d at 1020. The Holy See has a compelling interest in avoiding unnecessary disclosure of sensitive materials involving third parties, and Plaintiff is entitled only to jurisdictional discovery that is "reasonably calculated to elucidate facts bearing on the applicability" of the only jurisdictional issue before the court. <u>Raccoon Recovery, LLC v. Navoi Mining and Metallurgical Kombinat</u>, 244 F. Supp. 2d 1130, 1141 (D. Colo. 2002). Accordingly, I GRANT Plaintiff's Employment Requests in part and DENY them in part, and ORDER the Holy See to respond within 60 days as follows.

> <u>Requests for Production</u>

I GRANT RFP No. 8.

I GRANT RFP No. 9 as to documents regarding the general policies and process for laicization, but DENY the request as to documents relating to the laicization of any priests other than Ronan. Similarly, I GRANT RFP No. 10 as to documents describing the general policies of the Congregation for the Doctrine of the Faith ("CDF") regarding sexual abuse, but DENY that request as to documents related to sexual abuse by priests other than Ronan. I GRANT RFP No. 11 as to documents that refer to the general policies and procedures for training, selecting, or educating priests, but DENY that request as to documents referring to individual priests other than Ronan. I GRANT RFP No. 13 as to all documents which refer to the Holy See's regulation of priests' conduct in general, including but not limited to what they wear, the places they go, hours they keep, and where they live. I DENY RFP No. 13 to the extent Plaintiff seeks

PAGE 9 - OPINION AND ORDER

documents relating to the Holy See's regulation of individual priests other than Ronan. I
GRANT RFP Nos. 17, 18, 19, and 21 as to documents referring to the Holy See's general
authority, policies, practices, and procedures regarding sexual abuse and punishment, removal,
relocation, and treatment of priests, but DENY those RFPs to the extent Plaintiff seeks
documents referencing priests other than Ronan.

I DENY RFP Nos. 12, 15, 16, 20, and 22 as impermissibly broad, irrelevant, or
sufficiently covered by other requests.

Interrogatories

I GRANT ROG Nos. 1, 2, 4, 5, 6, 14, 15, 21.

I GRANT ROG No. 16 as to general policies, practices, and procedures implemented by
the Holy See regarding sex abuse, and any actions taken with respect to Ronan, but DENY ROG
No. 16 to the extent Plaintiff seeks information about the Holy See's actions regarding priests
other than Ronan. I GRANT ROG No. 19 as to general policies applied to priests who
committed sexual abuse and any financial arrangements, placements, and pensions related
specifically to Ronan, but DENY to the extent Plaintiff seeks information about any financial
arrangements, placements, and pensions for priests other than Ronan.

I DENY ROG Nos. 11, 12, and 13 as impermissibly broad and/or irrelevant.

Requests for Admission

I GRANT RFA Nos. 1-7, 9-12, and 16.

I DENY RFA No. 15 because it is not relevant to the jurisdictional issue before the court.

**C. Depositions**

Plaintiff asks the court to order the depositions of (1) the Holy See's Secretary of State,

Cardinal Tarcisio Bertone, (2) former Secretary of State, Cardinal Angelo Sodano, (3) the head of

the Holy See's Congregation for the Doctrine of the Faith ("CDF"), Cardinal William Levada,

(4) a former official at the Holy See's Congregation for Religious and Secular Institutes, Msgr.

Aloysius Callaghan, and (5) a former official at CDF, Father Michael Swalina.

Plaintiff is not entitled to depose any of these current or former officials because he fails

to demonstrate that any of the depositions are necessary to the resolution of the narrow

jurisdictional issue before the court. Alpha Therapeutic, 199 F.3d at 1088.  Indeed, Plaintiff does

not even allege that any of these officials can provide testimony specific to Ronan or his

employment.  While Plaintiff asserts that some of these officials were involved in the discipline

of abusive priests while working at the Vatican, none of them were involved in the discipline of

Ronan.  In fact, none of them worked on disciplinary issues related to sexual abuse until decades

after Ronan was removed from priesthood.  Plaintiff makes no showing that any of these

depositions are crucial to determining whether Ronan was an employee of the Holy See in 1965,

when he abused Plaintiff.  Accordingly, I DENY Plaintiff's request to depose (1) Cardinal

Tarcisio Bertone, (2) Cardinal Angelo Sodano, (3) Cardinal William Levada, (4) Msgr. Aloysius

Callaghan, and (5) Father Michael Swalina.

Finally, Plaintiff seeks a Federal Rule of Civil Procedure 30(b)(6) deposition regarding

the Holy See's relationship to individual priests, including Andrew Ronan, its commercial and

financial activities in the United States, and its delegation of authority to Ordinaries and

Religious Order leaders in the United States.

For the reasons discussed above, Plaintiff's request to depose a Rule 30(b)(6) witness is

DENIED as to the following topics: (1) the Order of the Friar Servants of Mary; (2) the Holy

PAGE 11 - OPINION AND ORDER

See's document policies, procedures, and practices; (3) the Holy See's delegation of control over individual priests, including the Holy See's approval of constitutions for religious orders and rules for religious orders supervision of priests; (4) the Holy See's financial dealings in the United States; (5) the Holy See's relationship with Ordinaries and Religious Order leaders in the United States; and (6) the Holy See's and the Pope's financial dealings with any Catholic entity in the U.S.  See Finnegan Decl., Ex. D, Notice of Taking Deposition, at 3 (deposition topic nos. 2, 3, 7, 8, 9, and 10).  Those issues are irrelevant to the jurisdictional dispute before the court.

I DEFER ruling on Plaintiff's other requested deposition topics until after the Holy See produces the documents, interrogatories, and responses ordered above.  As noted, the Holy See shall produce those materials within 60 days of this Order.  No later than 30 days after the Holy See produces those materials, Plaintiff may file a letter with the court (no more than 3 pages) specifically describing the discovery provided by the Holy See and explaining why a Rule 30(b)(6) deposition is "crucial" to the resolution of the narrow jurisdictional issue before the court (i.e., whether Ronan was an employee of the Holy See when he abused Plaintiff). Alpha Therapeutic, 199 F.3d at 1088.  No later than 14 days after Plaintiff's letter to the court, the Holy See may file a response letter (no more than 3 pages).  No reply will be permitted.

IT IS SO ORDERED.

DATED this   20th   day of April, 2011.


/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge


PAGE 12 - OPINION AND ORDER